BYRON A. OSGOOD *vs.* THOMAS F. McGANN.
THOMAS F. McGANN *vs.* BYRON A. OSGOOD.

Suffolk.    March 7, 1888. — June 19, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Contract — Construction — Evidence — Instructions to Jury.*

An agreement for the manufacture of cash cars, "according to the style" of a certain plan, contained minute directions for their construction, and provided that the wheels should be made of the "best quality of B. metal." An indorsement thereon of later date set forth that, by the consent of both parties, reference was to be had for the "form and style" to a model car instead of to the plan. In an action for breach of the agreement, the evidence of experts as to the meaning of the words "best quality of B. metal" was conflicting. *Held,* that an instruction to the jury, that they might find that the parties adopted the metal of the wheels of the model car as that called for by the agreement, was, in the absence of sufficient evidence of such an adoption, erroneous.

· TWO ACTIONS OF CONTRACT, upon an agreement under seal, dated July 10, 1883, and signed by Thomas F. McGann and by Byron A. Osgood, who did business under the name of the Osgood Cash Car Company, by which McGann "agrees to manufacture one thousand cash cars, to be made and finished in good substantial and workmanlike manner, . . . said cars to be made according to the style shown on a sketch or plan marked A, hereunto annexed; the wheels are to be three inches in diameter, and made of best quality of Babbitt's metal and nickel-plated." Osgood agreed to pay two dollars and a half for each car so made and delivered. This agreement contained minute specifications as to the material to be used in the rest of the car, and as to the method of manufacture, and bore the following indorsement:

"Boston, July 30, 1883. The plan described in the within contract, marked A, is omitted by consent of both parties, and for further description, for the form and style referred to, is shown in the style and form of the cars now in process of manufacture by Thomas F. McGann for the Osgood Cash Car Company, which style was referred to in said plan."

The two cases were tried together in the Superior Court, before *Aldrich*, J., who allowed a bill of exceptions, which, so far as material, is as follows.

Osgood contended that McGann did not finish the cars in a workmanlike manner and build the wheels of the cars of the " best quality of Babbitt's metal," as required by the agreement, and declined to accept more than four hundred and nine cars, and these he sold for a nominal sum.   McGann contended that he made and delivered the four hundred and nine cars according to the contract, and was ready to furnish the balance called for by it, but Osgood refused to receive and pay for the same.

Evidence was introduced tending to prove that the wheels put by McGann on the cars were not made of the best Babbitt's metal.   There was also much evidence on the part of experts, which was conflicting, as to what was the " best quality of Babbitt's metal," and as to the proportions of the different metals used in its production.

Osgood testified that he had had no experience whatever in regard to Babbitt's metal, except that he had heard of it and knew that it was a very hard metal.

McGann testified that he went with Osgood, on June 24, 1883, to Morey and Smith's; that Osgood " wanted to take me there to introduce me to the concern who had made wheels for him, and who, he thought, were the proper persons "; that he introduced him to Smith, saying, " You know just what I want, Mr. Smith, and I want you to go to work and make wheels for this man "; that Smith and Osgood came to his place some time in September, after the contract was signed, and Osgood said to Smith, " Mr. Smith, are these wheels made of the best Babbitt metal ? " to which Smith replied, " They are of the very best"; and that a car then in court and before the jury was in every respect identical with the car given by him to Osgood as a model car, save that the original car did not have a belting on top or chasing on the wheels.   The judge called attention to the indorsement on the agreement, and asked the witness if he was on July 30 making cars for the Osgood Cash Car Company, and if the car before the jury was the car referred to in the agreement, to which he replied, " No, sir, I had made them but one car. . . . That is the car, the simple difference is in the belting."   The

judge then added, " I understand that this is the car which he had already made, which is referred to in this indorsement, and which was adopted as the model car, according to which this contract was to be fulfilled." And to this statement there was no dissent expressed by either party.

One Hafey testified, that some time in July or August he heard Osgood, in McGann's presence, while Osgood was holding a cash car wheel in his hand, ask Smith, " Is this the best Babbitt metal ? " and that Smith said, " Yes, it is."

The judge instructed the jury as to the material of which these cars were made, as follows : " Undoubtedly, in the proper interpretation of that contract, they were to be made of the best quality of Babbitt's metal. Now, how are you to determine that question, What is the best quality of Babbitt's metal ? We have several formulas here. . . . How are you to determine what is the best Babbitt's metal as a practical question in this case ? Well, gentlemen, some rule must be given, and I think that where there is a difference, such a difference, in the opinion or judgment or experience of men dealing with this article, Babbitt's metal, — no two of them agreeing, — that if when parties are making a contract, that when these parties came to make their contract, if they selected a quality of Babbitt's metal which they called the best, and these wheels were to be made of that metal, then, if they were made of that metal, that is a fulfilment of the contract. You will understand, gentlemen, if there is a diversity of judgment as to what makes the best Babbitt's metal, and no two witnesses agreeing, that if, when parties come to make a contract, one part of which, to wit, the wheels in this case, are to be made of Babbitt's metal, and the best quality of Babbitt's metal, if the contracting parties select that particular quality of it which they have then and there before them as the best quality, then, although it should turn out afterwards that, in the judgment of other witnesses, it is not the best quality, that does determine it so far as this contract is concerned, and I therefore instruct you for the purposes of this case, and it seems to me it is the only interpretation that can be given to this contract as it is written, that if there was a model car, including the wheels, which wheels were made of a metal subject to the inspection of the contracting parties, and the agreement was that these thou-

sand cars were to be made in conformity with that style and form and kind of car, including wheels, and every other part of it, and the parties adopted that particular style of Babbitt's metal as the quality of metal which these cars were to be made of, and treated that as the best quality Babbitt's metal, then, if Mr. McGann made the wheels like that one, he fulfilled his contract, although it should turn out that it was not, in the judgment of other witnesses, the best quality of Babbitt's metal, because they adopted that. . . . I say, supposing they did not adopt that as the best quality of Babbitt's metal, and he undertook independently to say they shall be, then he must see to it that the wheels that he put upon these cars were of the best quality of Babbitt's metal."

The jury returned a verdict for McGann; and Osgood alleged exceptions.

*D. F. Crane*, for Osgood.

*C. M. Barnes*, for McGann.

W. ALLEN, J. The agreement under seal provided that the car wheels should be made of the best quality of Babbitt's metal. There was conflicting evidence as to the meaning of the words " best quality of Babbitt's metal," as used in the contract, and the court, in effect, instructed the jury that it was competent for them to find that the parties adopted the metal of which the wheels of a certain car, which was before them for some purpose, were composed, as the best Babbitt's metal intended by the contract.

It is objected that, if there was such ambiguity disclosed in the language as rendered it competent to show that the parties agreed upon and adopted a specimen of metal to be taken as the best Babbitt's metal of the contract, yet there was no evidence that the parties did so, and therefore instructions that the jury might find that they did were erroneous.

The contract itself provided that " said cars to be made according to the style shown in a sketch or plan marked A, hereto annexed." Then follow minute specifications as to the material and construction of the car and its different parts, that relating to the wheels being that " the wheels are to be three inches in diameter, and made of best quality of Babbitt's metal and nickel-plated." The contract was dated July 10. Under date of July 30, this indorsement was made upon it:

" The plan described in the within contract, marked A, is omitted by consent of both parties, and for further description, for the form and style referred to, is shown in the style and form of the cars now in process of manufacture by Thomas F. McGann for the Osgood Cash Car Company, which style was referred to in said plan."

There was evidence tending to prove that, when the indorsement was made, a car referred to in it was before the parties. The reference to the car in the indorsement is as a substitute for the plan mentioned in the contract, and is expressly limited to the purpose of showing the style and form of the car, and a construction of the writings that by them the parties adopted the material of the wheel of the car as the material of the wheel of the contract would be clearly erroneous.

The other evidence relating to the point is, in substance, as follows. Morey and Smith contracted to make the wheels for McGann. McGann testified that, before the contract was made, Osgood introduced him to Morey and Smith, saying that he wanted to introduce him " to the concern who had made wheels for him, and who, he thought, were the proper persons"; that Osgood said, on introducing him to Smith, " You know just what I want, Mr. Smith, and I want you to go to work and make wheels for this man," and told Smith that he wanted them made of the best Babbitt's metal, or something a little harder than the wheels of a car which was before them; and that Smith and Osgood came to his place some time in September, after the contract was signed, and Osgood said to Smith, " Mr. Smith, are these wheels made of the best Babbitt metal? " to which Smith replied, " They are of the very best." It may be assumed that the wheels referred to were those of the car mentioned in the indorsement. Another witness testified that some time in July or August he heard Osgood, in McGann's presence, while Osgood was holding a cash car wheel in his hand, ask Smith, " Is this the best Babbitt metal? " and that Smith said, " Yes, it is."

This we understand to be all the evidence which it can be claimed tends to prove that the parties agreed that the " best quality of Babbitt's metal" mentioned in the contract should be taken to be the metal of which the wheels of the cars referred to in the indorsement were made, or adopted the metal of those

wheels as the metal of the contract. Taking this evidence, without regarding the evidence tending to contradict and control it, we think it did not raise or present the particular issue which was submitted upon it to the jury, and that the instructions to the jury were erroneous.          *Exceptions sustained.*